Good morning, Your Honor. May it please the Court. Brian Jacobs. I represent Mr. Brown on appeal. I did not represent him below. This Court should grant bail pending appeal and should also deconsolidate Mr. Brown's appeal from his co-defendant, Mr. Wynder. Mr. Brown is not a flight risk, and he's raised multiple substantial issues, including the Miss Joinder issue we focus on in the briefs. And without this Court's action, he could end up serving all or at least most of his sentence before the merits of the appeal are decided. Well, that's part of the test. The other is a substantial issue, so I guess we'll get to that end, sure. The indictment here alleged that Mr. Wynder and Mr. Brown participated in what was effectively a nine-year pension fund fraud where Mr. Brown got essentially no benefit other than perhaps a $3,000 life insurance commission, while Mr. Wynder got some $500,000 or more. And the indictment joins those two fraud counts relating to that scheme with five tax counts against Mr. Wynder alone for something that Mr. Brown had absolutely nothing to do with as we lay out in our papers. And four of those allege that Mr. Wynder totally failed to file his taxes. It was a pure failure-to-file case. And we're not aware of any failure-to-file case where this Court has approved Joinder of those tax counts with any non-tax counts. Well, I guess the point was that his failure to file taxes with respect to some income that is illegal would go to his intent and his motive, right? The fact that- Wynder. That would not be enough to warrant Joinder under Rule 8B, Your Honor. Rule 8B provides for Joinder of the same series of acts or transactions constituting an offense or offenses. If the failure-to-file goes to intent or motive, that sounds more like 404B evidence or perhaps something that could be joined under Rule 8A in a case where it is one defendant. Where there are two defendants here, it's governed by 8B, which is a narrower and stricter standard because of the kind of prejudice that can result when you have two defendants joined and then you have counts that have nothing to do with one of the defendants. Under the 8B standard requiring the same series of acts or transactions, the tax counts against Wynder have nothing to do with the fraud counts. And you have to look at what is alleged in the superseding indictment itself. You can't look to the trial evidence under this Court's precedence. So you look to the superseding indictment and you ask, are the tax counts in any way connected to the fraud counts? Although, of course, they need to not just be a little bit connected. There needs to be a substantial connection. The word key link is what some of the Court's cases use. The Shalef and Biagi cases talk about situations where most of the unreported income in the tax counts was derived from the fraud counts. Counsel, can I ask you on your motion to deconsolidate, given the nature of your arguments, you're saying like, look, all these other counts had absolutely nothing to do with my client, there was all this spillover. Why wouldn't you want the appeals consolidated so one panel can see, in your view, why there were mountains and mountains of evidence presented that were utterly irrelevant to your client? I'm trying to understand the logic of why you'd want to deconsolidate. Your Honor, the focus of our deconsolidation motion at the time we made it was principally a concern with the delay of Mr. Wynder getting a resolution. At that point, there was no deadline set for his brief and it could have been months ahead. And given that my client received a sentence that could well have been served by the time the merits were even reached, there was a need for deconsolidation. I think that there are a number of merits issues we'll raise, some of which could benefit from being viewed alongside Wynder's, but many of which have not. If you were going to be rescheduled, hypothetically, if you didn't get deconsolidated, would you be satisfied with having your blue brief set for July 25th, which is I think the date that we just heard Mr. Murphy say that his client's blue brief is due? Yes, Your Honor. We asked- As the fallback asked for you. As the fallback asked, we asked in the alternative that we get the same deadline. And because 7-25, July 25th is Mr. Wynder's deadline, that would be the fallback request. And I understand the government has no objection to that remedy. But on the question of whether there's a substantial issue here warranting bail, there's really- So I want to get back to what you started to say. You said that the cases in which tax caps are included, even though it's not charged against every defendant, are ones where the unreported income for the tax violation, the vast majority of it comes from the underlying criminal action, that's what you said. I think I said that the language in Shalef and Biagi says most of the unreported income, but it's ultimately a question of- But what is the most, I mean, so you just said a minute ago that Wynder, is it Wynder or Wynder? I believe it's Wynder. So you said Wynder got $500,000, but it's not most of the unreported income? If you look at the superseding indictment, that $500,000 is derived from the nine year fraud scheme. The superseding indictment doesn't say whether it's all obtained in 2012, or in 2020, or in some combination of the years in between. The tax counts cover for those years. They don't say whether the money that goes unreported is money from the fraud scheme or money from elsewhere. The court can only look at what's alleged in the indictment. The indictment does not draw that link. As it happened at trial, some of the unreported income was from the fraud scheme, some of the unreported income is from Wynder's other income sources, including his business interests and a pension. But this court, for its analysis, has to look at what's alleged in the indictment. And the indictment does not say, and the government does not argue otherwise, that the money in the tax counts on which tax returns are not filed was derived from the fraud scheme. I thought the standard was substantial identity of facts or participants who arise out of a common plan or scheme. Is that not accurate? Your Honor, I think for purposes, the government's argument here is that the reason that substantial identity exists. I mean, we'd say substantial identity doesn't exist because only Wynder's involved and there's nothing that connects the two schemes, at least as they are alleged in the indictment. But the government's argument here has been that the tax income that wasn't reported came from the fraud scheme. That's not alleged in the indictment. This court- Well, Montventry is a case, that's a tax case, right? And so, I mean, that one doesn't seem to require that it's most of the income. It just seems to suggest that the revenue in the tax case, that's the issue of the tax account, came directly from the latter crime. Your Honor, Montventry has a very well-crafted indictment, and it's not a failure to file case. It specifically links the tax crimes alleged there to the fraud crimes and explains how the tax offenses there essentially result in a failure, in not revealing and concealing the fraud income. It's very different from a failure to file case. And the- But I mean, if he filed accurate tax returns, it would have disclosed the fraud, right? In this case? It may or may not have, but the superseding indictment doesn't allege it one way or the other. If you look at the indictment itself, you can't look at the trial evidence. This court has repeatedly been clear about that. The indictment itself, the tax counts, don't say whether the money they are concerned with is from some other source, from some other crimes, from some other legitimate source, or whether it's from the specific nine-year fraud charged in counts one and two. And what about, I mean, the prejudice here? The prejudice was substantial against Mr. Brown. Mr. Brown was, the government's jury addresses repeatedly describe Mr. Brown and Mr. Weiner's actions in conjunctive. They did this, they did that. This court has criticized that very practice in the Rittweger case at the end. Well, they were charged in certain counts together, but the instruction from the court made clear that the jury couldn't consider the tax counts against Mr. Brown, right? Well, the court gave the bare bones instruction that you have to look at the counts individually. The court did not give a specific limited instruction saying, be careful jury, don't consider that tax evidence against Mr. Brown. Was there a request for a more fulsome instruction? I don't believe an extensive instruction was asked for, but the- I thought the judge invited it. I thought when making the, because there was a motion to sever before trial, right? There was a motion to sever. So, I don't think the council's failure to ask for a more tailored limited instruction waives the argument that there was significant prejudice here, and Mr. Golzer even described Mr. Brown. I believe it, but it would suggest that it's not. I mean, if the district court said, okay, I'm denying your motion to sever. You can submit a proposed instruction to avoid any prejudice that might flow from the non-severance. And they didn't take them up on it, that would suggest that they weren't too worried about it, no? I don't know that that's an inference that could be drawn from council's conduct here, especially where Mr. Golzer called Mr. Brown the tax advisor, and the government called him the right-hand man to Mr. Winder. It was incredibly prejudicial to sit next to a defendant who didn't pay taxes at all for four years. It's, you know, akin to a felon possession or a legal reentry case where it's a very clear evidence of guilt. Mr. Brown is described as the right-hand man and tax advisor for Mr. Winder. And that lumped him together in the jury's view and could well have led to the outcome here. There was very little evidence that he got anything out of this scheme at all, other than this potential commission for life insurance of $3,000. It is not at all clear the jury would have convicted if he hadn't been lumped together with Mr. Winder this way. All right, well, we've gone over, you're setting off my whole schedule now. I apologize, Your Honor. I've been asking the questions, so it's on you. Okay, thanks very much. Thank you for the court's time. Mr. Roeback. May it please the court. The law favors joint trials of co-conspirators, and this is a run of the mill case for the joiner of non-tax and tax counts. Winder and Brown defrauded Liba's annuity fund, and Winder did not pay taxes on his proceeds from that conspiracy. The fraud occurred at the same time as the tax crimes, and fraud proceeds were distributed to Winder through the very cash and checks he used to circumvent Liba's payroll system as part of the tax conspiracy. So as the district court correctly concluded, the tax counts are a continuation of the fraud counts in a single series of transactions, and to the extent there was any error here, it was harmless. The defendant's contrary argument lies on a hyper-technical reading of the indictment, in which the failure of the indictment to allege the words that it is the same income means that it is not the same income and the accounts were not properly joined. But this court has never had that sort of magic words requirement that it requires an indictment to contain an express allegation like that. The tax counts charge that Winder evaded taxes, and that he did not file his tax returns during four years of the fraud conspiracy, and that Winder obtained income from cash and checks the way he was paid by the fraud conspiracy. That is enough. And I would just add, since I think opposing counsel mentioned a few times that there are no failure to file cases where a failure to file is joined with another conspiracy. One case we cite along those lines in our brief is United States versus Little, which is a case where the other conspiracy was a tax conspiracy, but it was a different sort of conspiracy. And it was joined with an individual's own failure to file count, and the court blessed that construction. Unless the court has any questions, we'd otherwise rest on our submission. All right. Thank you very much, Mr. Bromack. Thank you, Your Honor. Mr. Jacobs, we will reserve decision.